**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **FARHOOD ALLAH DADI SANI,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-970-JD** |
| | ) | |
| **FRED FIGUEROA, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Farhood Allah Dadi Sani, an Iranian citizen proceeding with counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE").[1] (Doc. 1).[2] United States District Judge Jodi Dishman referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). (Doc. 7). In accordance with the expedited briefing schedule and an extension of time, (Docs. 13, 22), Respondents timely filed a Response to the Petition. (Doc. 24). Petitioner timely filed a reply. (Doc. 26). The parties also provided briefing regarding Petitioner's detention time. (Docs. 28, 29, 30). For the reasons set forth below, the undersigned

---

[1] Petitioner is housed at Diamondback Correctional Facility in Watonga, Oklahoma. (Doc. 1, at 2).

[2] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

recommends that Petitioner be **GRANTED** habeas relief and **released from custody immediately.**

## I. Factual Background and Procedural History

Petitioner is a citizen of Iran who was admitted to the United States as a Lawful Permanent Resident on or about April 28, 1998. (Doc. 24, at Ex. 1, at 1; *id*. at Ex. 2, at 2). After four criminal convictions between 2008 and 2015, Petitioner was encountered by ICE while incarcerated in Texas. (*Id*. at Ex. 1, at 1-2). On June 8, 2015, he was released into ICE custody and issued a Notice to Appear, initiating removal proceedings. (*Id*. at 2; Doc. 24, at Ex. 2). On June 30, 2015, an Immigration Judge ordered Petitioner removed to Iran, and all parties waived appeal. (*Id*. at Ex. 3). On September 28, 2015, Petitioner was released on Order of Supervision ("OOS"). (*Id*. at Ex. 4).

On December 31, 2025, Petitioner presented to an ICE field office for a check-in where he was presented with a warrant of removal/deportation and was taken into custody. (*Id*. at Ex. 5; Doc. 1, at 10). Petitioner alleges that he was not provided with "any notice" – much less written notice – "of any specific circumstances purportedly justifying the revocation of his Order of Supervision and re-detention." (Doc. 1, at 10). He also contends he was not provided with an informal interview or an opportunity to contest the basis for his re-detention. (*Id*. at 10-11). He asserts that nothing has changed to make his removal more likely, and in fact, his removal to Iran is less likely than in years prior, due to the ongoing war between the United States and Iran. (*Id*. at 11-12).

Petitioner filed the instant Petition on April 30, 2026, when he had been in immigration detention for 120 days, or approximately 4 months since his December 31,

2025, encounter with ICE. (*Id*. at 11). On July 1, 2026, Petitioner filed a Notice to inform the court that he had been in detention for six months and one day. (Doc. 28, at 2). As of the date of this Report and Recommendation, Petitioner has been in immigration detention for 7 months and 27 days, and he remains detained at the Diamondback Correctional Facility. *See* ICE Online Detainee Locator System https://locator.ice.gov/odls/#/results (last accessed Aug. 27, 2026).

Respondents allege the following facts related to removal efforts:

> In Fiscal Year 2026, as of March 18, 2026, ERO has removed 176 Iranian citizens with 131 to Iran. In Fiscal Year 2025, ERO removed 191 Iranian citizens with only 106 to Iran. In Fiscal Year 2024, ERO removed only 27 Iranian citizens with only 1 to Iran.
>
> ICE ERO has submitted a Travel Document Request to Iran. Interest Sections for Iran continue to accept and review Travel Document Requests. As of May 21, 2026, all removals to Iran are paused. ERO is currently vetting [Petitioner] for possible third country removal.

(Doc. 24, at Ex. 1, at 2-3).

## II. Petitioner's Claims and Respondents' Responses

Petitioner raises six grounds for relief:

(1) Violation of the substantive requirements of the Immigration and Nationality Act ("INA") and related ICE regulations by re-detaining him without "a violation of release conditions or changed circumstances establishing a significant likelihood of removal in the reasonably foreseeable future." (Doc. 1, at 26-27).

(2) Violation of the procedural requirements of the INA and related ICE regulations by re-detaining him without any notification of the reasons for revocation, an opportunity to respond at an interview, identification of the official who made the revocation decision, or a custody review. (*Id*. at 27-28).

(3) Violation of the INA and due process under *Zadvydas v. Davis* because there is no significant likelihood of Petitioner's removal to Iran or any other country in the reasonably foreseeable future. (*Id*. at 28-30).

(4) Violation of procedural due process by failure to provide reasons for re-detention and an opportunity to respond. (*Id*. at 30-32).

(5) Violation of substantive due process because "Petitioner's current detention is not reasonably related to the statutory purpose of effectuating removal," as there is no significant likelihood of removal in the reasonably foreseeable future and "continued detention is not increasing the likelihood of removal." (*Id*. at 33).

(6) Removing Petitioner to a third country without affording him procedural protections under the Fifth Amendment, the INA, the Convention Against Torture would be unlawful. (*Id*. at 34).

As relief, Petitioner requests, *inter alia*, an order

a. restraining Respondents from transferring Petitioner outside of this judicial district pending litigation of this matter;[3]

[3] Under 8 U.S.C. § 1252(a)(2)(B)(ii), "no court shall have jurisdiction to review any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." *Id*. (citation modified). The decision regarding where to detain noncitizens awaiting removal proceedings is a discretionary power of the Secretary of DHS. Under 8 U.S.C. § 1231(g)(1), ICE "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." The Tenth Circuit has confirmed "the Attorney General is mandated to arrange for appropriate places of detention for [persons] detained pending removal." *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding in a civil rights lawsuit "a district court has no jurisdiction to restrain the Attorney General's power to transfer [ICE detainees] to appropriate facilities by granting injunctive relief"). Accordingly, § 1252(a)(2)(B)(ii) also bars judicial review of any decision by Respondents to transfer Petitioner to another ICE facility. *See, e.g.*, *Lway Mu v. Whitaker*, 18-cv-06924, 2019 WL 2373883, at *5 (W.D.N.Y. June 4, 2019) (citing § 1231(g)(1) and concluding "it does not have the authority to dictate to DHS where Petitioner should be housed"); *Olola v. U.S. Att'y Gen*., No. 18-CV-00058, 2018 WL 11446892, at *4 (D. Colo. Feb. 22, 2018) (finding § 1252(a)(2)(B)(ii) and § 1231(g) preclude judicial review of respondents' decision to transfer a noncitizen and "decisions to transfer an alien from one location to another are within the discretion of the Attorney General and therefore may not be reviewed or enjoined by the federal district

. . .

d. restraining Respondents from removing Petitioner from the United States without a full merits hearing for asylum, withholding of removal, and protection under the Convention Against Torture before an immigration judge with a right to an administrative appeal to the Board of Immigration Appeals.[4]

(*Id*. at 35). Petitioner also asks the Court to:

- Declare Petitioner's detention to be unlawful;

- Order Petitioner's immediate release, on conditions of release previously imposed;

- Enjoin Respondents from re-detaining Petitioner under 8 C.F.R. § 241.13(i)(2)-(3) unless and until Respondents have obtained a travel document allowing for Petitioner's removal from the United States;

- Enjoin Respondents from removing or transferring Petitioner to a third country without notice and an opportunity to seek relief from

---

courts"). Therefore, the undersigned concludes the Court does not have jurisdiction to prohibit Petitioner's transfer to another ICE facility.

[4] Federal law strips federal district courts of jurisdiction to consider "any cause or claim by or on behalf of any alien arising from the decision or action by [the Department of Homeland Security ("DHS")] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). In the Tenth Circuit, a court must review whether a habeas petitioner's claims are "connected directly and immediately with a decision or action by the Attorney General" to commence proceedings, adjudicate cases, or execute removal orders. *Tsering v. U.S. Immigr. & Customs Enf't*, 403 F. App'x 339, 343 (10th Cir. 2010). An order by this Court prohibiting Petitioner's removal would directly relate to a decision to execute removal orders. *See Olola*, 2018 WL 11446892, at *3 ("Federal law unambiguously strips federal district courts of jurisdiction to stay or enjoin an alien's removal.") (citation modified); *see also, e.g., Makuey v. Scott*, No. 2:26-CV-00632, 2026 WL 925647, at *4 (W.D. Wash. Apr. 6, 2026) (holding the court lacks jurisdiction to stay petitioner's removal under § 1252(g)); *Hernandez Llanes v. Warden*, *Fla. Soft Side Det. Ctr.*, No. 2:26-CV-1030, 2026 WL 925615, at *2 (M.D. Fla. Apr. 6, 2026) (same). Accordingly, § 1252(g) strips the Court of jurisdiction to consider Petitioner's request to prohibit his removal.

removal to that country before an Immigration Judge with a right to an administrative appeal to the Board of Immigration Appeals;

- Grant Petitioner reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A).[5]

(*Id.*)

In opposition, Respondents argue that (1) Petitioner's detention is within the presumptively reasonable period under *Zadvydas*, (Doc. 24, at 14-15); (2) Petitioner's procedural due process claim fails, (*id.* at 15-25); (3) the Court lacks jurisdiction under 8 U.S.C. §§ 1252(g) and (b)(9) to review re-detention for the purpose of executing a removal order, (*id.* at 25-27); (4) "Petitioner's request for relief due to alleged regulatory violations is incompatible with modern habeas proceedings," (*id.* at 27-30); and (5) requests for future injunctive relief are not justiciable by this Court, (*id.* at 30-32).

In advising the Court that his detention time had exceeded six months, Petitioner stated, "[n]ow that this mark has passed, there is no longer any dispute: (1) the *Zadvydas* claim is not premature, and (2) detention is not presumptively reasonable under *Zadvydas*. Now nothing stands in the way of *Zadvydas* relief." (Doc. 28, at 2) (citations omitted).

Respondents filed a Response to Petitioner's Notice, stating that there is still a dispute regarding the *Zadvydas* claim since

> "Petitioner's claim was not constitutionally ripe at the time of his filing his Petition." *See Zhang v. Grant*, et al., No. CIV-25-1301-PRW, 2026 WL

[5] To the extent Petitioner may be entitled to EAJA fees and costs as a prevailing party, he must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B); *see also Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting "EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention"). Accordingly, the Court need not address this request at this juncture.

> 1623009, at *3 (W.D. Okla. Feb. 3, 2026). Indeed, "[a]t the time he filed his Petition, he did not suffer an injury in fact, as his detention was both legally and constitutionally permissible." *Id*. (collecting cases and noting also that "[o]ther courts have recognized that an unripe *Zadvydas* claim is grounds for dismissal without prejudice."). Simply stated, Petitioner's *Zadvydas* claim remains unripe.

(Doc. 29, at 1-2). Petitioner replied, arguing that his *Zadvydas* claim is ripe and that the six-month threshold is a presumption, not a jurisdictional requirement. (Doc. 30).

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . challenges to the lawfulness of immigration-related detention." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

## IV. Legal Framework for the Detention or Release of Aliens Subject to a Final Order of Removal

When a non-citizen has been ordered removed from the country, 8 U.S.C. § 1231(a) provides a 90-day period for the government to accomplish removal, during which detention is mandatory. This is known as the "removal period," and begins at the latest of (1) "[t]he date the order of removal becomes administratively final," (2) "the date of the court's final order" when a removal order is judicially reviewed, or (3) "the date the alien is released from detention or confinement" if the alien is detained according to a non-immigration process (e.g., imprisonment for a crime). *Id.*; *see Zadvydas*, 533 U.S. at 682

("When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90–day statutory 'removal period,' during which time the alien normally is held in custody."). A removal order typically becomes administratively final "upon the earlier of": "a determination by the Board of Immigration Appeals affirming such order" or "the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B). However, "the decision of the Immigration Judge" may also "become[ ] final upon waiver of appeal." 8 C.F.R. § 1003.39; *see, e.g.*, *Muradyan v. Warden, Otay Mesa Det. Ctr.*, No. 3:26-cv-63-CAB-AHG, 2026 WL 184206, at *2 (S.D. Cal. Jan. 23, 2026) ("Petitioner was ordered removed on September 30, 2025, and because he waived his right to appeal, his order of removal became administratively final the same day.") (citation omitted). Thus, Petitioner's removal period began on June 30, 2015, when Petitioner waived appeal of his order of removal, and it ended ninety days later.

"If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall [ordinarily] be subject to supervision." 8 U.S.C. § 1231(a)(3). However, the Government retains discretionary authority to detain some aliens "beyond the removal period." § 1231(a)(6); *see Zadvydas*, 533 U.S. at 682 ("A special statute authorizes further detention if the Government fails to remove the alien during those 90 days.") (citing § 1231(a)(6)). Section 1231(a)(6) does not specify how long relevant aliens may be detained beyond the removal period. However, the Supreme Court in *Zadvydas v. Davis* held that "[a] statute permitting indefinite detention of an alien would raise a serious

constitutional problem" because it would directly implicate the Fifth Amendment's Due Process Clause. *Id.* at 690. The Court consequently held that § 1231(a)(6), "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Id.* at 689. The Court further specified that detention is presumptively reasonable for only six months. *Id*. at 701. *See also Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005) (reiterating "the reasonable period of post-removal detention is presumptively six months"). "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas,* 533 U.S. at 701.

Following the Supreme Court's holding, the due process concepts set forth in *Zadvydas* were codified into the immigration regulations governing the detention review process with amendments to 8 C.F.R. § 241.4 and the addition of 8 C.F.R. § 241.13.[6] These regulations require ICE to release a non-citizen ordered removed from the United States

[6] *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967-01, 56968, 2001 WL 1408247(F.R.) (Nov. 14, 2001) (to be codified at 8 C.F.R. Parts 3 and 241) ("In light of the Supreme Court's decision in *Zadvydas*, this rule revises the Department's regulations by adding a new 8 CFR 241.13, governing certain aspects of the custody determination of a detained alien after the expiration of the removal period. Specifically, the rule provides a process for the Service to make a determination as to whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future. Except as provided in this new § 241.13, the existing detention standards in § 241.4 will continue to govern the detention or release of aliens who are subject to a final orders of removal. Thus, aliens who are determined not to be a danger to the community or a flight risk may be released under § 241.4 regardless of whether there is a significant likelihood of removal.").

under an OOS if there is no significant likelihood that the non-citizen will be removed in the reasonably foreseeable future. § 241.13(g)–(h); *see also Zadvydas*, 533 U.S. at 699-700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by law.").

"Once ICE releases a non-citizen on an Order of Supervision, ICE's ability to re-detain that non-citizen is constrained by its own regulations." *Roble v. Bondi*, 803 F. Supp. 3d 766, 771 (D. Minn. 2025). As relevant here, after ICE releases a non-citizen on an OOS, federal immigration officials may later revoke his OOS and return the non-citizen to custody if he violates conditions of release, 8 C.F.R. § 241.13(i)(1), or "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). Such revocation triggers a notification and review process:

> **Revocation procedures**. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. [ICE] will conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

*Id.* § 241.13(i)(3).[7]

## V. The Court Has Jurisdiction To Hear Petitioner's Claims Regarding His Re-Detention.

Respondents argue this Court "lacks jurisdiction to review" Petitioner's challenge to his re-detention because "8 U.S.C. § 1252(g) strips district courts of jurisdiction" over

[7] Respondents agree that Petitioner's release and revocation of release are governed by 8 C.F.R. § 241.13(i). (Doc. 24, at 13).

claims "'arising from the decision or action by the Attorney General to . . . execute removal orders.'" (Doc. 24, at 25). Relying on *Tazu v. Att'y Gen. of United States,* 975 F.3d 292 (3d Cir. 2020), Respondents assert "re-detention [is] 'simply the enforcement mechanism'" chosen to execute Petitioner's removal and therefore the Court lacks jurisdiction over his claim. (*Id*. at 26) (quoting *Tazu,* 975 F.3d at 298). Respondents further assert that 8 U.S.C. § 1252(b)(9) similarly bars the Court's review, as it "states that if a claim 'aris[es] from any action taken or proceeding brought to remove an alien,' then review of the claim 'shall be available only in judicial review of a final order.'" (Doc. 24, at 27).

Multiple judges in this District have rejected Respondents' jurisdictional arguments, and the Court should do the same here. *See, e.g.*, *Cao v. Bondi*, No. CIV-25-1403-G, 2026 WL 637617, at *3 (W.D. Okla. Mar. 6, 2026) (noting *Tazu* "is not persuasive in light of the Supreme Court's consistent use of an exceedingly narrow construction on the jurisdiction channeling provisions of § 1252," and concluding the Court's "ability to consider the petition is not barred by § 1252(g)" as the petitioner was "not seeking review of the Executive's decision to execute an order of removal" but rather arguing "he is detained in violation of the INA because Respondents failed to comply with the applicable regulations prior to re-detaining him after he was previously released on an OOS") (citation modified); *Nguyen v. Dep't of Homeland Sec*., No. CIV-26-87-R, 2026 WL 1506428, at *2 (W.D. Okla. May 29, 2026) ("conclud[ing], as have multiple other district courts, that § 1252(g) does not defeat the Court's exercise of jurisdiction over a petitioner's claim that his current detention is illegal because he was not afforded the process required for revocation of his OOS") (collecting cases); *Semer v. Blanche*, No. CIV-26-238-SLP, 2026

WL 1427059, at *2 (W.D. Okla. May 21, 2026) ("reject[ing] Respondents' argument that § 1252(g) deprives the Court of jurisdiction" to hear petitioner's claims challenging re-detention following release on OOS); *Nguyen v. Bondi,* No. CIV-25-1402-D, 2026 WL 396548, at *4 (W.D. Okla. Feb. 12, 2026) ("The Court agrees with the magistrate judge's finding that neither 8 U.S.C. § 1252(b)(9) nor § 1252(g) deprives the Court of jurisdiction here."); *Thabata v. Blanche*, No. CIV-26-531-J, 2026 WL 1495209, at *1 (W.D. Okla. May 28, 2026) ("This Court and many others have already concluded that neither statute [8 U.S.C. § 1252(g) nor § 1252(b)(9)] strips the district court of jurisdiction" to hear petitioner's claim challenging re-detention.); *see also Montoya v. Holt*, No. CIV-25-01231-JD, 2025 WL 3733302, at *5 (W.D. Okla. Dec. 26, 2025) ("Considering the Supreme Court's consistent use of an exceedingly narrow construction on the jurisdiction channeling provisions, . . . the Court agrees with the R. & R. that those provisions do not block the Court's jurisdiction.").

Here, Petitioner does not "ask[] for review of an order of removal; ... challeng[e] the decision to detain [him] in the first place or to seek removal; ... [or] challeng[e] any part of the process by which [his] removability [was] determined." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Rather, he contends ICE unlawfully revoked his OOS, rendering his detention unlawful, and that he is being unlawfully detained under *Zadvydas*. Accordingly, the Court should find it has jurisdiction to consider the Petition.

## VI. Petitioner Is Entitled to Habeas Relief on Count Three Because His Continued Detention Violates *Zadvydas*.

### A. Petitioner's *Zadvydas* Claim is Ripe.

Respondents maintain that because Petitioner had not been in post-removal-order detention for a continuous period of six months before filing the instant Petition, his claims are unripe and should be dismissed, despite the fact he has now been in continuous detention for more than six months. (Doc. 29, at 2). The undersigned disagrees.

#### 1. Petitioner's Previous Period of Detention Can Be Aggregated With His Recent Detention To Meet the Six-Month Mark.

Petitioner first asserts that his 90 days of post-removal detention in 2015 should be aggregated with his 120 days of re-detention from December 31, 2025, to the filing of his Petition on April 30, 2026. (Doc. 1, at 18-19). Courts are mixed on whether such aggregation is appropriate, and this Court has previously disfavored it. *See Nguyen v. Bondi*, No. CIV-25-1204-JD, 2025 WL 4114231, at *3 (W.D. Okla. Dec. 31, 2025) ("Absent Supreme Court or Tenth Circuit precedent applying aggregation to the *Zadvydas* six-month period, the Court declines to apply it here."). However, as observed by a district court in this Circuit,

> it appears that district courts more often conclude that a detainee's periods of detention should be considered together in determining whether the detention has exceeded the presumptively reasonable time under *Zadvydas*. *See, e.g., Pena-Gil v. Lyons*, No. 25-cv-03268-PAB-NRN, 2025 WL 3268333, at *2 (D. Colo. Nov. 24, 2025) ("Despite petitioner's 20-month and five-month periods of detention being served nonconsecutively, petitioner has nonetheless been detained longer than the six-month presumptively reasonable period."); *Siguenza v. Moniz*, No. 25-cv-11914-ADB, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025) ("Most courts to consider the issue have concluded that the *Zadvydas* period is cumulative." (collecting cases)). The Court agrees with this weight of authority. "[A] uniform rule that counts

> and sums prior time in detention is appropriate. It is, after all, liberty at issue." *Abuelhawa v. Noem*, No. 4:25-cv-04128, 2025 WL 2937692, at *5 (S.D. Tex. Oct. 16, 2025). Holding otherwise would permit the federal government to "detain noncitizens indefinitely by continuously releasing and re-detaining them." *Siguenza*, 2025 WL 2734704, at *3. And as explained above, under *Zadvydas*, expiration of the presumptively reasonable six-month detention period does not mandate a noncitizen's release; detention may continue "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491. Expiration of the six-month period simply requires the Government to rebut a petitioner's showing that "there is no significant likelihood of removal in the reasonably foreseeable future," assuming the petitioner makes that showing. *Id*.

*Aguilar v. Noem*, No. 25-CV-03463-NYW, 2025 WL 3514282, at *3 (D. Colo. Dec. 8, 2025) (calculating Petitioner's detention "cumulatively" at eight months). The undersigned finds this reasoning persuasive and not at odds with the holding in *Zadvydas*. Accordingly, the undersigned recommends that the Court find that Petitioner's cumulative detention met *Zadvydas'* presumptively reasonable six months at the filing of his Petition.

### 2. The *Zadvydas* Claim Can Proceed Because the Six-Month Presumption of Reasonableness Can Be Rebutted.

If the Court declines to aggregate the detention periods and finds that Petitioner had only been in relevant detention for four months at the time of filing, it may nevertheless proceed to adjudicate his *Zadvydas* claim. Courts have recognized *Zadvydas* only "adopt[ed] a presumption—not a conclusive bar to adjudication of whether continued detention is authorized that lifts only after six months have elapsed." *Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D. Md. 2025); *accord Roble v. Pontesso,* 90 F. App'x 334, 336 (10th Cir. 2004) (acknowledging the Court created a "rebuttable presumption" in *Zadvydas*). Indeed, after *Zadvydas*, the Supreme Court rejected the government's argument that

*Zadvydas* "authorizes detention until it approaches constitutional limits" and instead interpreted § 1231(a)(6) "to authorize detention only for a period consistent with the purpose of effectuating removal." *Clark v. Martinez*, 543 U.S. 371, 384 (2005); *see also id.* at 387 (O'Connor, J., concurring) (noting "the 6-month presumption" "in *Zadvydas*" "is just that—a presumption"). Accordingly, a "petitioner is not barred from arguing that his detention has become prolonged prior to the six month presumptively reasonable period expiring." *Blandon v. Warden of the Mesa Verde Det. Facility*, No. 1:26-CV-01117-DAD-DMC(HC), 2026 WL 1506320, at *1 (E.D. Cal. May 29, 2026).

> The structure of *Zadvydas* itself confirms that the six-month period operates as a presumption, not a rigid jurisdictional bar that forces federal courts to consider only evidence existing on the date of the petition's filing. During the initial six months, detention is presumptively reasonable and the Respondent bears no burden to justify confinement. But that presumption may be overcome if a petitioner demonstrates that removal is not reasonably foreseeable—even within the six-month period.

*Lee v. Crawford*, No. 2:25CV535, 2026 WL 745263, at *4 (E.D. Va. Feb. 27, 2026), *report and recommendation adopted*, 2026 WL 738591 (E.D. Va. Mar. 16, 2026); *see also Villanueva v. Tate*, 801 F. Supp. 3d 689, 702 (S.D. Tex. 2025) ("[N]othing in *Zadvydas* precludes a challenge to detention before the presumptively constitutional time period has elapsed."); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395-98 (D.N.J. 2025) (holding 6-month presumption is rebuttable, and *Zadvydas* does not "preclude[] Petitioner from challenging his detention prior to the six-month mark"); *Zhu v. Noem*, No. 5:25-CV-00239, 2025 WL 4710076, at *8 n.4 (S.D. Tex. Dec. 23, 2025) ("[T]he Court also rejects any argument that Petitioner's claim should be dismissed on the ground that it was brought prior to the conclusion of the six-month presumptively reasonable period."); *Zavvar v.*

*Scott*, No. 25-2104-TDC, 2025 WL 2592543, *6 (D. Md. Sept. 8, 2025) ("[T]he fact that [petitioner] has not yet been detained for six months does not preclude his argument that his detention is unlawful," in part "because the six-month presumption is rebuttable.").

**3. Post-Filing Detention May Be Considered By the Court.**

Finally, it is undisputed that Petitioner has now been in consecutive detention for more than six months. "Although the Petition may have been filed before the six-month mark, the Court's review is not frozen in time as of the date of filing. Federal courts routinely consider post-filing developments in habeas proceedings challenging immigration detention." *Lee*, 2026 WL 745263, at *4. *See also Momennia v. Bondi*, No. CIV-25-1067-J, 2025 WL 3011896, at *9 (W.D. Okla. Oct. 15, 2025) (recommending granting petitioner's *Zadvydas* claim when petition was filed a few days before the six-month period and by the time the report and recommendation was issued it had been over six months), *report and recommendation adopted*, 2025 WL 3006045, at *1 (W.D. Okla. Oct. 27, 2025); *Smith v. Barr*, 444 F. Supp. 3d 1289, 1298 (N.D. Okla. 2020) ("On these facts, petitioner arguably had a ripe constitutional claim under *Zadvydas* as of April 1, 2019, after he filed the instant petition but well before briefing was complete.").[8]

[8] *But see Zhang v. Grant*, No. CIV-25-1301-PRW, 2026 WL 1623009, at *2-3 (W.D. Okla. Feb. 3, 2026) (finding petitioner's *Zadvydas* claim "was not constitutionally ripe" when he filed his petition "more than three weeks before *Zadvydas*'s presumptively constitutional six-month detention period lapsed"). The undersigned acknowledges that this Court has also found that a petition filed before consecutive detention reached six months was premature, *Nguyen*, 2025 WL 4114231, at *2-3, but notes that at the time of the Court's order, petitioner had only been detained approximately four months (August 26, 2025, to December 31, 2025).

Accordingly, the undersigned recommends that the Court proceed to the merits of Petitioner's *Zadvydas* claim.

**B. Petitioner Has Met His Initial Burden.**

To obtain habeas relief, a petitioner has the initial burden (1) to show his post-removal-order detention has surpassed six months or to rebut the presumption of reasonableness if such detention is less than six months, and (2) to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701; *see also Soberanes*, 388 F.3d at 1311 ("If removal is not reasonably foreseeable, the court should hold continued detention unreasonable.") (citation modified). If the petitioner meets his initial burden, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

As discussed above, the undersigned recommends that the Court find Petitioner's relevant detention has surpassed six months. However, even if Petitioner's detention is entitled to a presumption of reasonableness based on his Petition being filed short of six months, he has sufficiently rebutted that presumption and likewise provided good reason to believe that his removal is not significantly likely in the reasonably foreseeable future. *See, e.g., Vijdani v. Mattos*, No. 25-CV-02496-GMN-EJY, 2026 WL 560209, at *4 (D. Nev. Feb. 27, 2026) (granting release to a habeas petitioner "detained for nearly four months" after finding petitioner "demonstrates there is no significant likelihood of removal in the reasonably foreseeable future and [r]espondents fail to respond with evidence sufficient to rebut that showing"); *Rodriguez Romero v. Ladwig*, 827 F. Supp. 3d 779, 804-08 (M.D. La. 2026) (noting *Zadvydas* created "a presumption rather than a conclusive bar"

and finding petitioners who had been detained for less than six months before filing their petition had demonstrated their removal was not significantly likely in the reasonably foreseeable future); *Tumasov v. Doe 1*, No. 26CV590-LL-DEB, 2026 WL 458146, at *3 (S.D. Cal. Feb. 18, 2026) (holding "the six-month presumption in *Zadvydas* is rebuttable and therefore does not foreclose claims challenging detention less than six months" and granting habeas relief to detained petitioner less than four months after removal order became final).

Notably, Petitioner is not required under *Zadvydas* to "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable," *id.* at 702, only that that he has "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *id.* at 701. "To meet the burden of establishing this, Petitioner must demonstrate the existence of either institutional barriers to repatriation or obstacles particular to his removal." *Dusabe v. Jones*, No. CIV-24-464-SLP, 2024 WL 5465749, at *3 (W.D. Okla. Aug. 27, 2024), *report and recommendation adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025).

Petitioner identifies several barriers to his repatriation to Iran. Petitioner attempted to obtain travel documents from the Iranian government in 2015-2016, and "the Iranian government did not agree to admit Petitioner or otherwise issue travel documents" apparently because Petitioner lacks proper identification and he "cannot name any Iranian residents capable of verifying his identity." (Doc. 1, at 9). Since Petitioner was re-detained on December 31, 2025, he has attempted to call the Iranian embassy, but the embassy did not answer the phone call. (*Id*. at 12). Most significantly, the United States and Iran are

now at war, a fact of which the Court may take judicial notice.[9] (*Id.*) Respondents concede that "[a]s of May 21, 2026, all removals to Iran are paused." (Doc. 24, at Ex. 1, at 2-3). Petitioner argues that "even if deportation flights to Iran were to resume in general, the specific obstacle in Petitioner's case remains: Iran's refusal to issue travel documents due to lack of Iranian identification documentation." (Doc. 1, at 13). Furthermore, Petitioner asserts, and Respondents functionally concede, that "[t]he government has not identified any plans to remove Petitioner to any other country." (*Id.*; *see* Doc. 24, at Ex. 1, at 3 ("ERO is currently vetting [Peitioner] for *possible* third country removal.") (emphasis added).

Judges, including in this District, have recently concluded in similar circumstances that a petitioner "provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" when (1) the petitioner had "previously applied for travel documents" and was denied and (2) respondents had "not identified any countries with which any level of progress has been made toward obtaining the country's acceptance of Petitioner." *Momennia*, No. CIV-25-1067-J, 2025 WL 3006045, at *1; *see also Babakhani v. Gantt*, No. CIV-26-705-SLP, 2026 WL 1822995, at *4 (W.D. Okla. June 24, 2026) (noting that "Petitioner's travel document request has remained pending since it was originally sent to the Iranian Consulate on April 10, 2025. ERO did not provide any meaningful updates or show any contact has been made with the Iranian Consulate

[9] The most-recent hostilities between the United States and Iran began on February 28, 2026 – two months prior to Petitioner filing this action. *See* Reed D. Rubinstein, Operation Epic Fury and International Law, UNITED STATES DEPARTMENT OF STATE, https://www.state.gov/releases/office-of-the-legal-adviser/2026/04/operation-epic-fury-and-international-law/ (last accessed Aug. 27, 2026).

regarding the status of the travel document request" and finding "Petitioner has shown good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future"); *Gomez v. Mattos*, No. 25-CV-00975-GMN-BNW, 2025 WL 3101994, at *5 (D. Nev. Nov. 6, 2025) (finding petitioner met his initial burden because he "has identified a barrier preventing him from being repatriated to [his home country], has demonstrated that he is not a citizen of any other country, and that ICE has not identified a third country that will accept him"); *Trejo v. Warden of ERO El Paso E. Mont.*, No. EP-25-CV-401-KC, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025) (finding petitioner met his burden by demonstrating "that he is not a citizen of any other country, and that ICE has not identified a third country that will accept him").

On these facts, Petitioner has met his initial burden (1) to show his post-removal-order detention has surpassed six months <u>or</u> to rebut the presumption of reasonableness if such detention is less than six months, and (2) to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."

**C. Respondents Have Not Met Their Burden.**

Having concluded Petitioner established "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Respondents, though, have not met their burden.

As an initial matter, Respondents do not even allege Petitioner's removal is significantly likely in the reasonably foreseeable future. (*See* Doc. 24, at Ex. 1). Rather, they provide statistics about how many Iranian citizens have been removed in 2024, 2025,

and through March 18, 2026. (*Id.* at 2). This information is insufficient to rebut Petitioner's showing because such figures do not "provide[] . . . evidence of progress . . . made towards removal of Petitioner himself." *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025). *See also Cao*, 2026 WL 637617, at *5 ("[A] general indication that removals to Vietnam were likely because removals were occurring more frequently in 2025 than in recent years . . . does not satisfy the . . . determination of a significant likelihood that *the* alien may be removed.") (internal quotation marks omitted).

Respondents also declare that "ICE ERO has submitted a Travel Document Request to Iran[,] [and] Interest Sections for Iran continue to accept and review Travel Document Requests." (Doc. 24, at Ex. 1, at 2). Respondents have not provided a date on which such a request was made – perhaps it was made in January 2026, shortly after Petitioner's detention – but at the very least this declaration was made on May 22, 2026, and Respondents have not notified the Court of any response to such a request. (*Id.*) Respondents' statement that "ERO is currently vetting [Petitioner] for possible third country removal" is vague and likewise has not progressed. (*Id.*) These facts are wholly insufficient to rebut Petitioner's showing that there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. *See Thabata*, 2026 WL 1495209, at *2 ("Such prolonged silence [of almost six months since a travel document request was made] reinforces that removal is not significantly likely in the reasonably foreseeable future.").

On similar facts to the case at bar, Chief Judge Palk recently found:

> The representations and data set forth by Respondents does not adequately address the likelihood of removal of Iranian citizens in the current circumstances of this matter. Since the date of the removal data provided by Respondents, the United States and Iran have engaged in an armed conflict. While it appears that the situation between the two countries has begun to improve, Respondents provide no evidence that removal of Iranian citizens has resumed. . . .
>
> . . .
>
> The record lacks any evidence to show that removal of aliens similarly situated to Petitioner (or even removal of aliens to Iran, generally) has been successful in the last three (3) months. Under these circumstances, the passage of time takes on more significance as inaction and/or lack of progress in effectuating removal is precisely what *Zadvydas* guards against.
>
> Accordingly, the Court finds that Petitioner's removal is not significantly likely in the reasonably foreseeable future. Petitioner is entitled to habeas relief pursuant to 28 U.S.C. § 2241 as he is in custody "in violation of the Constitution or laws ... of the United States." *Id*. § 2241(c)(2).

*Babakhani*, No. CIV-26-705-SLP, 2026 WL 1822995, at *5 (citation modified). Indeed, courts around the country have expressed doubt that removal to Iran remains significantly likely in the reasonably foreseeable future given the current armed conflict between the United States and Iran. *See, e.g.*, *Khodabakhsh v. English*, No. 3:26cv161 DRL-SJF, 2026 WL 1560574, at *3 (N.D. Ind. May 22, 2026) (granting relief under *Zadvydas* and noting "[t]he court is also aware of the recent military conflict between the United States and Iran and the present uncertainty of a resolution, which reasonably impedes any removal to Iran for the foreseeable future."); *Anjomshoa v. Oldham Cnty. Jail*, No. 3:26-CV-020-CHB, 2026 WL 1034403, at *4 (W.D. Ky. Apr. 16, 2026) (granting relief under *Zadvydas* and noting "the Court takes judicial notice of the current miliary conflict between the United States and Iran that began on February 28, 2026"); *see also Bahadorani*

*v. Bondi*, No. 25-6177, Doc. 36, at 2-3 (10th Cir. Mar. 25, 2026) (remanding *Zadvyadas* case to Western District of Oklahoma because "armed conflict" between U.S. and Iran "potentially overtook the district court's finding of fact on significant likelihood of removal"). Respondents provide no reason to doubt these courts' analyses, and to the contrary concede that "[a]s of May 21, 2026, all removals to Iran are paused." (Doc. 24, at Ex. 1, at 3).

Thus, the undersigned concludes that Respondents have failed to rebut Petitioner's *Zadvydas* claim, and habeas relief is warranted in the form of immediate release from custody. *See e.g., Babakhani*, No. CIV-26-705-SLP, 2026 WL 1822995, at *5; *Bui v. Bondi*, No. CIV-26-91-J, 2026 WL 788947, at *6 (W.D. Okla. Mar. 20, 2026); *Gholestani v. United States Dist. Ct.*, No. CIV-25-1392-R, 2026 WL 596649, at *2 (W.D. Okla. Mar. 3, 2026).

## VII. Petitioner Is Also Entitled to Habeas Relief on Counts One and Two Because Respondents Failed to Follow Their Own Regulations in Revoking his OOS.

### A. Respondents Failed To Comply With the Notice and Interview Requirements in § 241.13(i)(3).

In Counts One and Two, Petitioner alleges Respondents failed to comply with the INA and with ICE's applicable regulations before re-detaining him after his prior release on an OOS. (Doc. 1, at 26-28). Under § 241.13(i), an OOS may be revoked in two circumstances: (1) where the non-citizen "violates any of the conditions of release," § 241.13(i)(1); or (2) where, based on "changed circumstances," ICE determines that there is a significant likelihood of removal in the reasonably foreseeable future, § 241.13(i)(2). *See Tran v. Blanche*, No. CIV-25-1357-G, 2026 WL 1181700, at *2 (W.D. Okla. Apr. 30,

2026). Subsection (i)(3) provides that, "[u]pon revocation," the non-citizen "will be notified of the reasons for revocation" and afforded an informal interview. § 241.13(i)(3). By its terms, this requirement applies to any revocation under § 241.13(i), regardless of whether the revocation is based on an alleged violation of release conditions or on changed circumstances. *Tran*, 2026 WL 1181700, at *2.

The undersigned concludes that when ICE re-detained Petitioner, they failed to give him proper notice, or a prompt informal interview, as required by § 241.13(i)(3). In his declaration to this Court, Deportation Officer Foncha does not indicate that Petitioner was provided written notice of the revocation or afforded an informal interview when he was taken into ICE custody. (Doc. 24, at Ex. 1). The Declaration states only that ICE took Petitioner into custody when he presented at an ERO field office. (*Id*. at 2). Respondents provide the Warrant of Removal/Deportation, which states that Petitioner is subject to removal/deportation based on a final order of an immigration judge. (Doc. 24, at Ex. 5). The Warrant itself does not identify the basis for the revocation of Petitioner's OOS. (*Id.*) Accordingly, the undersigned finds that Respondents failed to comply with their own notice and interview requirements for revocation of the OOS.

### B. Respondents Failed to Establish Changed Circumstances as Required by § 241.13(i)(2).

Not only did Respondents fail to provide Petitioner adequate notice and an interview under § 241.13(i)(3), the undersigned finds Respondents have not met their burden to show that prior to revoking Petitioner's OOS they determined there were "changed circumstances" such that there is a significant likelihood that Petitioner may be removed

in the reasonably foreseeable future. 8 C.F.R. § 241.13(i)(2). "[T]he burden [is] on Respondents to establish a significant likelihood of removal in the reasonably foreseeable future in the context of re-detention under § 241.13(i)(2)." *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025); *see also Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) (finding it was burden of ICE to demonstrate substantial likelihood of removal in the reasonably foreseeable future existed at the time of re-detention); *Roble*, 803 F. Supp. 3d at 772-73; *Escalante v. Noem*, No. 25-cv-182 (MJT), 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150-51 (D. Mass. 2025).

In determining whether removal is significantly likely in the reasonably foreseeable future, the regulations specify that ICE should consider several factors including the non-citizen's efforts to comply with the removal order; the history of ICE's efforts to remove individuals to the destination country or to third countries; the ongoing nature of ICE's efforts to remove the particular non-citizen and his assistance with those efforts; the reasonably foreseeable results of those efforts; and the views of the Department of State regarding the prospects for removal to the countries in question. 8 C.F.R. § 241.13(f).

Petitioner asserts and Respondents do not contest that Petitioner attempted in good faith to obtain travel documents from Iran in 2015-16 and was unsuccessful. (Doc. 1, at 8-9). It is also uncontested that Petitioner was released in 2015 on an OOS under § 241.13, which required a determination at that time that his removal was not significantly likely in the reasonably foreseeable future. (Doc. 24, at 13). It is uncontested that after he was re-

detained, Petitioner followed ICE's instructions to call the Iranian embassy, and the embassy did not answer. (Doc. 1, at 12).

Deportation Officer Foncha asserts the following:

> On December 31, 2025, [Petitioner] presented to ERO field office and was taken into ICE custody.
>
> . . .
>
> In Fiscal Year 2026, as of March 18, 2026, ERO has removed 176 Iranian citizens with 131 to Iran. In Fiscal Year 2025, ERO removed 191 Iranian citizens with only 106 to Iran. In Fiscal Year 2024, ERO removed only 27 Iranian citizens with only 1 to Iran.
>
> ICE ERO has submitted a Travel Document Request to Iran. Interest Sections for Iran continue to accept and review Travel Document Requests. As of May 21, 2026, all removals to Iran are paused. ERO is currently vetting Sani for possible third country removal.

(Doc. 24, at Ex. 1, at 2-3).

Significantly, Officer Foncha makes no representation that Petitioner's removal is significantly likely in the reasonably foreseeable future. (*See id.*) Furthermore, Respondents do not claim that ICE made any effort to secure travel documents prior to Petitioner's re-detention. Indeed, when travel documents are requested after revocation of release, courts have granted the petition for writ of habeas corpus and ordered petitioner's immediate release, even if travel documents were subsequently secured. "The question . . . is not whether petitioner's deportation is now likely in the reasonably foreseeable future but whether such likelihood existed at the time his [OOS] was revoked." *Munagi v. McDonald*, 813 F. Supp. 3d 225, 229 (D. Mass. 2025) (granting petitioner's release, despite the fact that the government had obtained travel documents for petitioner's return to Kenya,

because the travel documents were not requested until *after* petitioner's release had been revoked). "Section § 241.13(i)(2) requires a pre-arrest, individualized determination 'on account of changed circumstances' that removal is reasonably foreseeable. A decision to revoke that lacks a supporting factual basis, perhaps in hopes that such a basis will be identified post-hoc, violates the regulatory scheme." *Pham v. Warden*, No. 1:25-CV-1873 DC AC, 2026 WL 673404, at *10 (E.D. Cal. Mar. 10, 2026), *report and recommendation adopted*, 2026 WL 849861 (E.D. Cal. Mar. 27, 2026). *See also Duong*, 2025 WL 3187313, at *3, *5-6 (granting petitioner's writ and ordering his immediate release, despite the fact that the government had obtained travel documents for petitioner's return to Vietnam, because the travel documents were not requested until almost one month *after* petitioner's release had been revoked); *Sarail A.*, 803 F. Supp. 3d at 788-89 (granting writ of habeas corpus and releasing petitioner after concluding that respondents violated § 241.13(i)(2) because, among other things, a request for travel documents several weeks after petitioner's release was revoked "could not have constituted the supposedly changed circumstances underlying the Notice").

Moreover, merely requesting travel documents is also insufficient to establish that there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future. *See Sun v. Noem*, 2025 WL 2800037, at *2-3 (S.D. Cal. Sep. 30, 2025) ("Respondents say they are 'putting together a travel document [TD] request to send to [the] Cambodian embassy,' and that '[o]nce ICE receives the TD, it will begin efforts to secure a flight itinerary for Petitioner.' The Court finds these kind of vague assertions—akin to promising the check is in the mail—insufficient to meet ICE's own requirement to

show 'changed circumstances' or 'a significant likelihood that the alien may be removed in the reasonably foreseeable future.'") (record citations omitted); *Hoac v. Becerra*, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future.").

Finally, as discussed above, the increase in removals to Iran from 2024 to 2026 is insufficient to meet Respondents' burden. *Pham*, 2025 WL 3243870, at *2; *Cao*, 2026 WL 637617, at *5.

In sum, the record before the Court establishes that ICE failed to make an individualized determination regarding the significant likelihood of Petitioner's removal based on changed circumstances prior to Petitioner's re-detention as required by § 241.13(i)(2).

### C. ICE's Failure To Abide by its Regulations Warrants Habeas Relief in the Form of Immediate Release.

A majority of district courts have found that Respondents' failure to comply with § 241.13(i)(2) or § 241.13(i)(3) "amounts to a due process violation, entitling the petitioner to habeas relief" in the form of immediate release from custody. *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *1 (W.D. Okla. Nov. 20, 2025) (collecting cases); *Li v. Bondi*, No. CIV-25-1480-J, 2026 WL 475133, at *3 (W.D. Okla. Feb. 19, 2026); *Ye v. Bondi,* No. CIV-25-1230-D, 2025 WL 3485420, at *2 (W.D. Okla. Dec. 4, 2025); *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 3452454, at *4 (W.D. Okla. Dec. 1, 2025). The undersigned recommends that the Court come to the same conclusion in this case.

The undersigned is aware that this Court has previously found that it "does not have any binding precedent that would indicate [that failure to comply with regulatory provisions in revoking an OOS] is the sort of constitutional and statutory guarantee protected by the writ of habeas corpus" and observing that "[a]lthough plenty of district courts are concluding regulatory violations by Respondents can appropriately be remedied through grants of habeas relief and a petitioner's release from detention, those decisions are not binding precedent." *Nguyen v. Bondi*, No. CIV-25-1204-JD, 2025 WL 4114231, at *3 (W.D. Okla. Dec. 31, 2025). However, the undersigned respectfully urges that the Court reconsider this finding under the specific facts in this case; as it has noted, "'[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, **or even upon the same judge in a different case**.'" *Id*. (citing *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011)) (emphasis added).

In *Nguyen*, the petitioner "contend[ed] that ICE did not adhere to the regulatory requirements governing written notice, review, and an informal interview." *Id*. at *4. Here, Petitioner makes these claims plus the claim that ICE violated § 241.13(i)(2), which directly imports the statutory and constitutional protections of *Zadvydas* into ICE regulations by requiring ICE to make a determination that changed circumstances cause removal to be significantly likely in the reasonably foreseeable future so that a non-citizen is not subject to prolonged, indefinite detention. As another Judge of this District has stated,

> The procedures required by 241.13(i) are more than a mere formality; they codify *Zadyvas* principles into the immigration regulations governing detention review process.

> By mandating minimum procedures, the regulation ensures the individual is afforded the basic due process protections guaranteed by the Fifth Amendment. A wholesale failure to provide the required notice and the mandated interview—thereby depriving the individual of any meaningful opportunity to contest the revocation of release—implicates those constitutional protections directly. "'[ICE], like any agency, has the duty to follow its own federal regulations . . . . As here, 'where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and [ICE] fails to adhere to it, the challenged [action] is invalid.'" *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (citation omitted).

*Li*, No. CIV-25-1480-J, 2026 WL 475133, at *3 (citation modified); *see also Hamidi*, No. CIV-25-1205-G, 2025 WL 3452454, at *3 ("ICE, like any agency, has the duty to follow its own federal regulations. To be sure, not every procedural misstep raises a constitutional issue. However, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, like the opportunity to be heard, and ICE fails to adhere to it, the challenged action is invalid.") (quoting *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017)). Thus, although a violation of any regulation may not warrant habeas relief, a violation of § 241.13(i)(2) specifically should result in a finding that Petitioner is "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241(c)(3).

**VIII. The Court Should Decline to Address Petitioner's Remaining Claims.**

Because the undersigned recommends that the Court grant the Petition under *Zadvydas* and due to the regulatory violations, the Court should decline to address his remaining claims as to how his detention is unlawful. *See Ye*, No. CIV-25-1230-D, 2025 WL 3485420, at *2 n.2 (acknowledging the Magistrate Judge did not consider petitioner's

remaining arguments for habeas relief after recommending habeas relief on one claim); *see also Hamidi,* 2025 WL 3452454, at *2 n.2 (same).

Furthermore, the undersigned recommends that the Court find Petitioner's claims for injunctive relief not ripe for adjudication, namely his requests for an order restraining Respondents from (a) removing him from the United States to Iran or a third country,[10] or (b) re-detaining him, unless certain procedural conditions are met. (Doc. 1, at 34-35). The Tenth Circuit has explained that

> [t]he ripeness doctrine involves both constitutional requirements and prudential concerns. The purpose of the ripeness doctrine is to prevent the premature adjudication of abstract claims. Constitutional ripeness is based on Article III's requirement that federal courts hear only "cases" and "controversies." Because federal courts cannot give advisory opinions, the matter must come to the court in "clean-cut concrete form."
>
> Even when [a matter] satisfies Article III's "case or controversy" requirement, [a court] may still decline to review it under the prudential ripeness doctrine. Application of this doctrine turns on two factors: (1) the fitness of the issue for judicial review, and (2) the hardship to the parties from withholding review. As for whether the issue is fit for judicial review, we focus on whether the determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed. Thus, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998).

*United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019) (citation modified). *See also Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) ("Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative

---

[10] *See also* footnote 4, *supra*.

policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."). Petitioner's concerns about how his future re-detention or removal may occur "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all," *Texas*, 523 U.S.at 300, and granting any relief to him would require the Court to give an advisory opinion. The Court should decline to do so.

## IX. Recommended Ruling and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Court finds Petitioner is currently detained in violation of *Zadvyas*; **and/or** that he was revoked from his OOS in violation of § 241.13(i)(2), or § 241.13(i)(3), or both, and accordingly **GRANTS** the Petitioner for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 1) to the extent it requests habeas relief under 28 U.S.C. § 2241. The undersigned recommends that the Court order Respondents **to release Petitioner from custody immediately**, subject to an appropriate OOS. *See Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated."). The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within three business days of the Court's order.

**The court advises the parties of their right to object to this Report and Recommendation by September 3, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).[11] The Court further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 27th day of August, 2026.

Amanda L. Maxfield
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE

---

[11] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) (noting that "[t]he Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").